[Cite as *State v. Street*, 2020-Ohio-173.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| JOY MARIE STREET | : | Case Nos. 2019CA00096 & |
| | : | 2019CA00097 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:       Appeal from the Municipal Court,
                               Case Nos. 2018TRC9333 &
                               2018CRB3379



JUDGMENT:                      Affirmed




DATE OF JUDGMENT:              January 21, 2020




APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

KASSIM AHMED                              JEFFREY JAKMIDES
2 James Duncan Plaza                      325 East Main Street
Massillon, OH  44646                      Alliance, OH  44601

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant Joy Marie Street appeals the May 6, 2019 judgment of the Massillon Municipal Court which denied her motion to suppress. Plaintiff-appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On December 11, 2018, at approximately 8:30 p.m., Dylan Gregorich was a passenger in a friend's car when he noticed a blue Honda Accord being driven erratically. The driver was swerving, and nearly drove the Accord into the ditch numerous times. When the driver went left of center and came within inches of colliding with oncoming traffic, Gregorich called 911.

{¶ 3}   Gregorich stayed on the phone with 911 dispatch for roughly 15 minutes as his friend continued to follow the vehicle. The driver eventually pulled into an allotment in Lawrence Township and pulled into a driveway. Apparently having pulled into the wrong driveway, the driver then backed out of the driveway, nearly hit a stop sign, turned into another driveway and then pulled crookedly into the attached garage at that residence. Gregorich's friend stopped and the two watched as an older woman, later identified as Street, exited the Accord. Street walked toward the door of the home, stumbled, and nearly fell over. After a man came out into the garage and helped the woman into the house, Grogorich's friend drove away.

{¶ 4}   Lawrence Township Police Officer Brandon Wright arrived at the address given to dispatch by Gregorich within minutes of Gregorich's departure. Dispatch advised Wright to conduct a welfare check. Wright observed the garage door of the residence was open, the lights were on, and the blue Accord was parked askew in the garage with the

driver's side door hanging open. The plate on the Accord matched that which Grogorich had provided to the 911 dispatcher. Wright approached the vehicle to see if anyone was in it. Finding the car empty, Wright knocked on the man-door in the garage.

{¶ 5} Street's husband answered the door and Wright asked if he could speak to Street. Mr. Street advised she was sleeping even though just minutes had passed since Gregorich observed her entering the home.

{¶ 6} Street did, however, come to the door. She appeared confused, slurred her speech, and exhibited glassy, bloodshot eyes. Wright asked Street if she could step outside. Once she entered the garage, Wright noted Street emitted a strong odor of alcohol.

{¶ 7} Wright explained why he was there, and Street claimed she had not been driving. Her husband intervened and claimed they had just come home from dinner and that he had driven the red truck parked in the driveway. The red truck, however, was cold to the touch. Wright had further observed the driver's seat in the Accord was pulled close to the steering wheel, consistent with Street's stature.

{¶ 8} Wright advised Street he wanted to perform field sobriety testing. Street asked if she could go inside to get her shoes first, which she did and then returned.

{¶ 9} Street was later charged with operating a vehicle under the influence of alcohol and menacing. On March 6, 2019, Street filed a Motion to Suppress/Dismiss. On April 24, 2019, a hearing was held on the matter.

{¶ 10} The state presented testimony from Gregorich and Officer Wright. Street rested without presenting evidence. The trial court overruled Street's motion to suppress.

{¶ 11} On June 6, 2019, Street entered pleas of no contest, and the trial court found her guilty. This appeal followed. Street raises one assignment of error:

I

{¶ 12} "THE TRIAL COURT ERRED IN REFUSING TO SUPPRESS ALL EVIDENCE OBTAINED AS A RESULT OF AN ILLEGAL SEARCH AND SEIZURE CONDUCTED IN FLAGRANT VIOLATION OF THE FOURTH AMENDMENT. OFFICERS ENTERED THE APPELLANT'S GARAGE WITHOUT A WARRANT, ORDERED HER TO EXIT HER HOME FOR QUESTIONING, ORDERED HER TO PERFORM FIELD SOBRIETY TESTS, AND PHYSICALLY ASSAULTED HER HUSBAND WHEN HE ATTEMPTED TO CALL THEIR ATTORNEY – ALL IN CONDUCTING WHAT THE POLICE REPORT ITSELF CHARACTERIZED AS A "WELFARE CHECK" ON APPELLANT."

{¶ 13} In her sole assignment of error, Street argues the trial court erred in denying her motion to suppress because police illegally entered her garage without a warrant, ordered her out of her home for questioning and to perform field sobriety testing, and physically assaulted her husband. We disagree.

{¶ 14} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141(1991); *State v. Guysinger*, 86 Ohio App.3d 592, 621 N.E.2d 726(1993). Second, an

appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (1994); *State v. Claytor*, 85 Ohio App.3d 623, 620 N.E.2d 906 (1993); *Guysinger*, supra. As the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

{¶ 15} When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See *State v. Dunlap*, 73 Ohio St.3d 308, 314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).

{¶ 16} First, we note the suppression hearing was limited to a narrow issue. At the beginning of the hearing, the following exchange took place following opening statements by each party:

The Court: Ok, well before we get started on the evidence 'cause I think both sides are getting far afield. We're here to determine whether it was lawful entering the property to even effect and arrest.

The State: Yes, your honor.

The Court: Ok, I think that's the purpose of it. So I'm not gonna get into the…

Defense: What happened after.

The Court: …yeah, what happened afterwards. I'm not gonna be watching…the 911 tape might be very relevant. However, I don't think the, the, uh, the camera in the cruiser's gonna be relevant at all because that's after the fact, right? I mean that's after the…we're gonna first determine the purpose. If it turns out later that those other things become relevant, then we can expand the hearing if there are issues that are being asked to suppress involving the actual arrest.

Defense: Ok.

State: I understand your honor.

The Court: Alright. Is everybody…are we on the same page 'cause I don't want to go and try the entire case here today.

Defense: I hear you. Ok, I hear you.


{¶ 17} Thus, the only issue before the trial court was whether Officer Wright had the authority to enter Street's attached garage, knock on the door, and request that she come to the door and out into the garage. We note appellant's statement of facts goes

well beyond this narrow focus. We further note appellant references a police report and a cruiser video, neither of which was presented at the suppression hearing, nor are part of the record. We therefore may not consider either of these items in our analysis of appellant's assignment of error, and confine our analysis to the issue placed before the trial court, and ultimately determined by the trial court.

**Officer Wright's Entry into Appellant's Attached Garage**

{¶ 18} Street first argues Officer Wright illegally entered her attached garage without a warrant. We disagree.

{¶ 19} Street argues an attached garage falls within the curtilage of one's home and therefore a warrant was required before Wright could enter the garage. The state does not dispute the inclusion of an attached garage as part of the home itself, but argues the intrusion here was warranted under the community caretaking/emergency aid exception to the Fourth Amendment warrant requirement. We agree.

{¶ 20} In *State v. Applegate*, 68 Ohio St.3d 348, 349-350, 626 N.E. 942 (1994), the Supreme Court of Ohio stated:

> A warrantless police entry into a private residence is not unlawful if made upon exigent circumstances, a "specifically established and well-delineated exceptio[n]" to the search warrant requirement. *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585. " 'The need to protect or preserve life or avoid

serious injury is justification for what would be otherwise illegal absent an exigency or emergency.' " *Mincey v. Arizona* (1978), 437 U.S. 385, 392-393, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290, 300, quoting *Wayne v. United States* (C.A.D.C.1963), 318 F.2d 205, 212, certiorari denied (1963), 375 U.S. 860, 84 S.Ct. 125, 11 L.Ed.2d 86. In *Wayne*, then-federal Court of Appeals Judge Warren Burger explained the reasoning behind the exigent circumstances exception:

" [T]he business of policemen and firemen is to act, not to speculate or meditate on whether the report is correct. People could well die in emergencies if police tried to act with the calm deliberation of the judicial process." *Wayne* at 212.

A warrantless search must be "strictly circumscribed by the exigencies which justify its initiation." *Terry v. Ohio* (1968), 392 U.S. 1, 26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889, 908. * * *

{¶ 21} While the emergency aid exception does not require probable cause, officers must have reasonable grounds to believe there is an immediate need to act in order to protect lives or property, and there must be some reasonable basis for associating an emergency with the location. *State v. Bubenchick*, 5th Dist. Stark No.

2014CA00020, 2014-Ohio-5056, ¶ 14 citing *State v. Gooden*, 9th Dist. Summit No. 23764, 2008-Ohio-178, ¶ 10.

{¶ 22} In their community caretaking roles, officers may intrude on a person's privacy to carry out community-caretaking functions to enhance public safety. *State v. Stanberry*, 11 th Dist. Lake No. 2002-L-028, 2003-Ohio-5700 ¶ 23, citing *State v. Norman*, 136 Ohio App.3d 46, 54, 735 N.E.2d 953 (1999). "The key to such permissible police action, is the reasonableness required by the Fourth Amendment." *Stanberry* at ¶ 23.

{¶ 23}  Street argues not only that Officer Wright entered her garage in violation of the Fourth Amendment's warrant requirement, but also that Wright had no concern for her safety when he conducted the welfare check. However, "[a]n action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.' " (Emphasis sic.) *Brigham City, Utah v. Charles W. Stuart*, et al, 547 U.S. at 404, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) quoting *Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978).

{¶ 24} Here, when viewed objectively, certainly there was a reasonable basis for Officer Wright to believe Street could be in need of assistance, and that a welfare check was prudent. Based on Gregorich's report, Street's driving was profoundly impaired. Street could have been intoxicated, or she could have been in need of medical assistance. We find Wright's entry into the Street's attached garage to check for occupants in the Honda Accord, did not violate Street's Fourth Amendment protections.

**Continuing the Investigation**

{¶ 25} Street further argues that once her husband told Officer Wright she was sleeping, Wright's welfare check was complete. We disagree.

{¶ 26} As we have already determined, Wright was lawfully within Street's garage to conduct a welfare check. What exactly happened after Mr. Street said his wife was sleeping is unclear from the record, which merely indicates Street "ultimately came to the door." T. 30. What is clear, however, is Officer Wright never entered the home and did not force Street to come to the door. Further, when Wright stated he wanted to conduct field sobriety testing, Street voluntarily went back inside to retrieve shoes, and returned to the garage to cooperate with the testing. Based upon the record before us, we conclude that Wright was justified in continuing his investigation upon the report from dispatch and after finding no one in the Honda Accord.

{¶ 27} The sole assignment of error is overruled. The judgment of the Massillon Municipal Court is affirmed.

By Wise, Earle, J.

Wise, John, P.J. and

Baldwin, J. concur.

EEW/rw